108 P.3d 1003

STATE of Idaho, Plaintiff–Respondent,

v.

Nathan D. DIGGS, Defendant–Appellant.

No. 30272.

Court of Appeals of Idaho.

Jan. 6, 2005.

Review Denied March 21, 2005.

Molly J. Huskey, State Appellate Public Defender; Jason Curtis Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Melissa Nicole Moody, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Nathan D. Diggs appeals his conviction on three counts of lewd and lascivious conduct with a minor under sixteen. He contends that the district court committed reversible error when it allowed the victim to testify that Diggs had attempted to molest the victim's younger brother.

## I.

### BACKGROUND

In September 2002, seven-year-old J.S. was living in a motel room in Garden City with his mother and his brother, three-year-old L.S. Around the end of September, Diggs moved in with J.S.'s family, apparently so that Diggs and J.S.'s mother could save on room rent. Diggs agreed to baby-sit the boys while their mother worked the night shift as a certified nursing assistant. This arrangement lasted about three weeks, after which J.S.'s family moved. On November 21, 2002, J.S. told his mother that he had had sexual contact with Diggs. After an investigation, the State charged Diggs with three counts of lewd conduct with a minor under sixteen, Idaho Code § 18–1508, for acts alleged to have been committed between September and November 2002.

At the jury trial, the following exchange took place during the prosecutor's direct examination of J.S.:

PROSECUTOR: Did you ever see Nathan trying to touch your brother?

DEFENSE COUNSEL: Judge, I'm going to object to any sort of questioning along this line. There is no allegations that Mr. Diggs in fact ever attempted to do so. I think it's an improper question. It's not relevant. Much of this is highly prejudicial.

THE COURT: Objection, counsel?

J.S.: Will you ask me that again?

THE COURT: Why don't you just ask him, and I will sustain the objection.

THE PROSECUTOR: [J.S.], why did you tell your mom finally what happened, what Nathan did to you? Why did you tell your mom?

J.S.: Because he tried it on [L.S.].

Defense counsel then moved for a mistrial, which the court denied. The court did, however, give the following limiting instruction to the jury:

> You have heard evidence about the reason [J.S.] gave for revealing the alleged abuse. While you may consider the evidence as it relates to the reason and timing of his disclosure, you may not consider it for any other purpose.

The jury convicted Diggs on all three counts.

Diggs appeals. He argues that the testimony that Diggs had "tried it on [L.S.]" was inadmissible, and that the district court committed reversible error when it denied the motion for a mistrial.

## II.

### ANALYSIS

■ When reviewing a district court's denial of a motion for mistrial, our inquiry is whether the event that precipitated the motion constituted reversible error when viewed in the context of the full record. *State v. Martinez,* 136 Idaho 521, 522, 37 P.3d 18, 19 (Ct.App.2001); *State v. Barcella,* 135 Idaho 191, 197, 16 P.3d 288, 294 (Ct.App.2000).

■ Diggs first contends that the testimony that he had "tried it on [L.S.]" was not relevant to any material issue in the trial and could only be considered character evidence made inadmissible by Idaho Rule of Evidence 404(b). That rule provides in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

A two-tiered analysis is used to determine the admissibility of evidence concerning other crimes, wrongs or acts. The trial court must determine whether the evidence is relevant for a purpose other than that prohibited by Rule 404(b), and if so, the court must then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Dixon,* 140 Idaho 301, 306, 92 P.3d 551, 556 (Ct.App. 2004); *State v. Avila,* 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App.2002). The initial question of relevance is one of law over which we exercise free review. *State v. Hairston,* 133 Idaho 496, 502, 988 P.2d 1170, 1176 (1999).

■ In denying defense counsel's motion for a mistrial, the district court concluded that the evidence was relevant to explain why J.S. disclosed the abuse to his mother when he did, after the abuse had been ongoing for an extended time. The court noted that the existence of a period of nondisclosure can cast doubt on the credibility of the victim witness, so evidence that shows what triggered the eventual disclosure will be relevant. The circumstances of the disclosure, the trial court noted, "can be very revealing about whether it is, for example, coming out of a divorce situation, where it might be pressure for a parent to make an unfounded accusation, whether it's a situation where a child might be seeking attention. There are a variety of reasons why it's highly relevant." The trial court also expressly weighed the probative value of the evidence against its potential for unfair prejudice and concluded that the probative force was not substantially outweighed by its prejudicial effect.

We find no error in the trial court's determination. We have previously held that expert testimony regarding late reporting by child abuse victims is relevant because delayed disclosure is a matter that a jury may have difficulty understanding and because children may have difficulty articulating the reasons for their behavior. *See State v. Blackstead,* 126 Idaho 14, 21–22, 878 P.2d 188, 195–96 (Ct.App.1994); *State v. Lawrence,* 112 Idaho 149, 154, 730 P.2d 1069, 1074 (Ct.App.1986).

Diggs contends that this case is analogous to *State v. Shepherd,* 124 Idaho 54, 855 P.2d 891 (Ct.App.1993), where we overturned a conviction for sexual abuse of a child because during his testimony the victim, J.P., blurted out that the defendant had molested another person. We find *Shepherd* readily distinguishable. In that case, J.P. had testified that the defendant was like a father figure to J.P. for awhile. The prosecutor asked when

J.P.'s positive feelings for the defendant had changed, and J.P. responded that it occurred when the defendant molested another child. No evidence was ever presented to show that learning of the defendant's molestation of a third party was what motivated J.P. to report his own victimization. Indeed, there was no evidence that J.P.'s knowledge of the other molestation was related in any way to his own disclosure. Neither side presented any evidence concerning J.P.'s initial disclosure to his mother, and the accusation that the defendant had also molested a third person was never again mentioned in the trial. We held that in those circumstances, the evidence of the other molestation was not relevant to any material issue before the jury. *Shepherd,* 124 Idaho at 58, 855 P.2d at 895.

*Shepherd* differs significantly from the present case, where J.S.'s testimony shows that his report to his mother was tied directly to his awareness that Diggs was beginning to molest L.S. Defense counsel did not cross-examine J.S. about his delay in reporting the molestation, but evidence of what caused the victim to finally disclose may be relevant, even if the defense has not used the fact of the delay to attack the victim's credibility. As the district court explained, even without a direct challenge to the victim's credibility based on the delay in reporting, a jury may consider the absence of a prompt report of the crime as a factor that makes the victim less credible, and the jury may be left to speculate about the reason for the ultimate revelation. An explanation for why an alleged victim eventually chose to report the abuse can aid the fact finder in determining whether the victim is credible or whether the victim's testimony might have been conjured up to harm the defendant or fabricated for some other improper purpose.

Diggs argues that J.S.'s testimony was improper because it did not include J.S.'s basis of knowledge. This was not necessary, however. Although the basis for J.S.'s knowledge of the attempted molestation of L.S. would be critical if the evidence was offered to prove that misconduct, it is not necessary here because the evidence was admitted solely to show why J.S. reported that he had been molested. When offered for that purpose, the basis for or accuracy of J.S.'s knowledge or belief was of no importance.

Our determination that the testimony that Diggs had "tried it on [L.S.]," disposes of only the first part of the two-tiered analysis under I.R.E. 404(b). The district court's balancing of the probative value of the evidence against unfair prejudice is reviewed for an abuse of discretion. *State v. Doe,* 136 Idaho 427, 431, 34 P.3d 1110, 1114 (Ct.App. 2001).

Diggs's only contention in this regard is that the district court acted outside the bounds of its discretion. We disagree. The State's case rested entirely upon whether the jury found J.S. to be credible. That J.S. provided an explanation for why he eventually decided to tell about the abuse was likely an important component of his credibility in the eyes of the jury. The sole evidence of the L.S. incident consisted of J.S.'s response, "Because he tried it on [L.S.]." The district court specifically ordered that no more inquiry be made into the incident with L.S. The purpose of that restriction was to minimize any prejudice to Diggs because further inquiry into the L.S. incident could have magnified its importance in the minds of the jurors. The district court also gave a limiting instruction to the jury concerning the use of this evidence. We conclude that the district court acted within the bounds of its discretion when it determined that the probative value of the testimony was not substantially outweighed by unfair prejudice.

We find no error in the district court's decision to allow J.S.'s testimony relating to Diggs's alleged attempt to molest L.S. The judgment of conviction is therefore affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.